UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE CITY OF COLLEGE STATION, TEXAS, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-11-2023 |
| | § | |
| STAR INSURANCE COMPANY, | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court is the defendant's, Star Insurance Company ("Star") motion for summary judgment and brief in support (Docket Nos. 13-14), the plaintiff's, the City of College Station ("City"), response in opposition (Docket No. 15), Star's reply (Docket No. 18), and the City's sur-reply (Docket No. 23). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Star's motion for summary judgment.[1]

**II.     FACTUAL BACKGROUND**

Star Insurance Company ("Star") issued a Public Entity Excess Liability Policy, Policy No. CP 0267725 (the "Policy"), to the City of College Station ("City"), covering the period of October 1, 2007 to October 1, 2008. The Policy, which also covers individual public officials and employees of the City, has a limit of $5,000,000 for each accident or occurrence, with an aggregate limit of $15,000,000, and a $250,000 self-insured retention ("SIR"). The Policy provides, *inter alia*, that Star "will pay those sums that the insured becomes legally obligated to

---

[1]After filing its response to Star's motion, the City also filed a motion for partial summary judgment (Docket No. 16). Star filed a Response in Opposition (Docket No. 25), the City filed a Reply in Support (Docket No. 28), and Star filed a Sur-Reply in Opposition (Docket No. 34). Since the Court grants Star's motion for summary judgment, the City's motion for partial summary judgment is moot.

pay as damages because of a 'wrongful act' to which this insurance applies" and "[Star] will have the right and duty to defend any 'suit' seeking those damages." An endorsement to the Policy, entitled "Public Officials and Employees Liability Insurance," contains several exclusions. One of the exclusions states that the insurance "does not apply to any liability":

> actually or allegedly arising out of or caused or contributed to by or in any way connected with any principle of eminent domain, condemnation proceeding, inverse condemnation, dedication by adverse use or adverse possession, by whatever name called.

On November 14, 2008, Weingarten Realty Investors ("WRI") filed suit against the City and several public officials (the "officials") in the United States District Court for the Southern District of Texas, in a case styled *Weingarten Realty Investors and Weingarten Investments, Inc. v. The City of College Station, et al.*, C.A. No. 08-3390 (the "underlying lawsuit"). WRI claimed, among other things, that the City had deprived it of the use, benefit, and enjoyment of a parcel of land (the "Property") by denying several of WRI's zoning requests regarding the Property.[2] The facts below are recited as *alleged* in the underlying lawsuit.

WRI alleged that the City had adopted a Comprehensive Plan (the "Plan") to be used as a guide for growth and development for the entire City and that state and local laws required zoning decisions to be made in accordance with the Plan. In 1990 and 1997, the Plan showed the Property to be designated for regional retail uses. A 2000 Neighborhood Action Plan and a 2001 Land Use Study also designated the Property for retail use. WRI purchased the Property in 2006 for $14 million with the goal of developing a retail center with Wal-Mart as its anchor tenant. In purchasing the Property, WRI relied on the Plan, which showed the Property to be designated for

---

[2] WRI amended the petition on August 12, and September 18, 2009. Star and the City both acknowledge that the allegations in WRI's Original Complaint, First Amended Complaint, and Second Amended Complaint are largely the same. Therefore, as both parties have done, this Opinion refers to the allegations in the Second Amended Complaint, unless it is indicated otherwise.

regional retail use. WRI also relied on statements made by individual members of the City Council that its zoning request would be approved in accordance with the Plan.

After purchasing the Property in 2006, WRI requested that it be zoned for commercial use. Despite the Plan and state and local laws requiring approval, and despite the City Council's staff recommendation that WRI's zoning request be approved, the City denied it. All the officials voted to deny WRI's zoning request, not because it violated any existing rules or regulations, but because of the officials' dislike for Wal-Mart or for their own personal or political interests.

After WRI's first zoning request was denied, it had a meeting with the City. At the meeting, the City advised WRI to break up its zoning requests into smaller applications in order to arouse less opposition from the community. The City also made it "clear" that if WRI wanted the City to grant the zoning request, WRI had to replace Wal-Mart with an "HEB" store. Pursuant to the City's instructions, WRI submitted a second application in February of 2007, requesting that a smaller portion (16 of the 76 acres) of the Property be zoned for commercial use. WRI also negotiated an agreement with HEB to be the new anchor tenant on the Property. The City, however, "tabled" WRI's request in order to "purportedly" review the results of a transportation study. Although the study was completed in 2007, the City did not "un-table" WRI's second zoning application and failed to take action on it for another year and a half. Therefore, WRI filed the underlying lawsuit.

The court initially stayed the underlying lawsuit to allow the City to "un-table" WRI's second zoning request. The City subsequently approved the zoning request but subject to "unprecedented conditions," including the building of a road through the development and a "severely restricted entrance/exit access . . . ." The "extremely limited access points required in

this conditioned rezoning render[ed] it impossible to develop even the rezoned portion of the Property in a commercially viable way." Furthermore, while WRI's second application remained "tabled," the City amended its Plan and ordinances to specifically block WRI's rezoning and development efforts and to retroactively justify its prior denials of WRI's zoning requests.

WRI submitted two more zoning requests after the underlying lawsuit was filed but both requests were denied. Moreover, despite over ten years of designating all of the Property for regional retail use, in May 2009, the City introduced a new Comprehensive Plan that changed the land use designation and designated large portions of WRI's Property for suburban Commercial and General Suburban use.

WRI had signed contracts or negotiated letters of intent with numerous retailers, including Wal-Mart, HEB, Lowe's, Cracker Barrel, IHOP, and St. Joseph's Hospital, but because of the City's "delay tactics," WRI was left with no tenants and "no commercial use" for the Property. WRI labeled the City's refusal to approve its zoning requests as "arbitrary and capricious," thereby rendering WRI's investment worthless and interfering with contractual relationships and potential purchasers of the Property. Hence, the City allegedly deprived WRI of the use, benefit, and enjoyment of the Property.

Specifically, WRI raised the following claims against the City: (a) the City deprived WRI of its right to substantive due process because the City's decisions were arbitrary and capricious and have denied WRI its right to develop the Property; moreover, the City "has unreasonably interfered with WRI's rights to use and enjoy its Property . . . ." (b) the City violated WRI's right to equal protection because the "denials of WRI's zoning requests were unreasonable and constitute treatment different than that given by [the City] to individuals and entities situated similarly to WRI . . . ."; (c) the City violated Article I, Section 17 of the Texas Constitution

because the City's "intentional actions in denying WRI's zoning requests constitute a taking under Article I, Section 17 of the Texas Constitution [and] have unreasonably interfered with WRI's rights to use and enjoy its Property . . . . "; (d) the City and individual officials promised WRI that zoning would be approved and WRI relied upon those promises to its detriment; and (e) the individual officials intentionally interfered with WRI's existing and prospective contracts and business relations.

The City retained counsel but ultimately settled the underlying lawsuit with WRI. Subsequently, the City, claiming that it had incurred defense costs over and above the SIR, requested that Star reimburse it for the amount it spent in defending and settling the underlying lawsuit.

On April 11, 2011, the City filed suit against Star in the district court of Brazos County, Texas, for breach of contract, statutory damages, and attorney's fees based on Star's alleged failure to pay the City's defense and reimbursement costs. Star timely removed the case to this Court on the basis of diversity of citizenship. Star now moves for summary judgment, claiming that Exclusion D in the Policy (the "inverse condemnation" exclusion)[3] precludes coverage for all of the claims asserted against the City in the underlying lawsuit.

### III. CONTENTIONS OF THE PARTIES

#### A. Star's Contentions

In its motion for summary judgment, Star argues that the City's claims are barred by the inverse condemnation exclusion provision, which precludes coverage for any liability "actually or allegedly arising out of or caused or contributed to by or in any way connected with any

---

[3]For convenience, the Court will refer to the exclusion as the inverse condemnation exclusion but, as discussed *infra* (discussion, Part V), the exclusion is broad and bars coverage for claims that were not necessarily labeled "inverse condemnation."

principle of eminent domain . . . inverse condemnation . . . , by whatever name called." Star claims that WRI "effectively set out a claim for inverse condemnation" in the underlying lawsuit because it argued that the City's intentional refusal to grant its commercial zoning requests deprived WRI of the use, benefit, and enjoyment of the Property, thereby resulting in a "total denial of WRI's rights," rendering WRI's investments "worthless," and interfering with numerous contractual obligations. Star further argues that the exclusion applies not only to WRI's specific claim of inverse condemnation, but also to WRI's other claims against the City because they all arise from and are related to the City's alleged intentional and improper refusal to grant the zoning requests. Therefore, Star claims that since the Policy does not provide coverage for the claims asserted in the underlying lawsuit, the City is not entitled to attorneys' fees or statutory penalties, and Star's summary judgment motion should be granted.

**B.     The City's Contentions**

The City argues that the inverse condemnation exclusion does not apply because the underlying lawsuit does not involve inverse condemnation and the allegations therein do not include an inverse condemnation cause of action. According to the City, while, at some point, WRI referred to the alleged conduct as a "taking," the bulk of the allegations was actually based on the City and its officials' failure to live up to prior statements and representation that led WRI to believe the City would change the zoning of the Property. The City argues that since it simply refused to rezone WRI's Property, "it 'took' nothing and condemned nothing." The City also contends that even if a claim of inverse condemnation was asserted in the underlying lawsuit, the other causes of action alleged by WRI exist independently of any inverse condemnation. Therefore, the City claims that since Star has not shown that every allegation in the underlying lawsuit implicates the exclusion, it must cover all costs the City incurred defending and settling

the underlying lawsuit. Alternatively, the City argues that the inverse condemnation exclusion is ambiguous and, as such, a reasonable interpretation teaches that, in order to have a taking, the City or its officials must have taken some affirmative act against WRI's Property for public use. Moreover, the City claims that Star's duty to defend is separate from its duty to indemnify and, since Star has introduced no evidence of the settlement of the underlying lawsuit, Star has not met its burden of showing that the inverse condemnation exclusion precludes coverage for the sum paid to settle the underlying lawsuit.

### IV.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.     ANALYSIS AND DISCUSSION

Star argues that the inverse condemnation exclusion precludes coverage because all the claims WRI raised against the City in the underlying lawsuit were related to, or arose from, the alleged wrongful denial of WRI's zoning requests by the City. The City, on the other hand, contends that the underlying lawsuit did not involve inverse condemnation, and, as such, the exclusion does not apply. This Court finds that the inverse condemnation exclusion applies and precludes coverage.

### A.     General Principles Regarding the Interpretation of Insurance Policies

Under Texas Law, which governs this diversity suit, insurance policies are construed in accordance with the same general rules that govern the interpretation of contracts, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Therefore, terms within an insurance contract are to be given "their plain, ordinary, and generally accepted

meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

If an insurance contract is worded such that it "can be given a definite or certain legal meaning," then it is unambiguous and can be enforced as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract is ambiguous, however, the court should adopt the interpretation that is most favorable to the insured. *Id.* Nevertheless, a contract is not ambiguous merely because the parties offer contradictory interpretations. Rather, ambiguity exists only when the contract is susceptible to two or more reasonable interpretations. *See Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n. 28 (5th Cir. 2000) (citations omitted).

Pursuant to the "eight corners" rule, an insurer's duty to defend "is determined solely by the allegations" in the pleadings of the underlying lawsuit and the language of the insurance policy, without resorting to extrinsic evidence. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In reviewing the underlying pleadings, the court should focus on the factual allegations that show the origin of the damages rather than on the legal theories advanced. *See Willbros RIP, Inc. v. Continental Cas.Co.*, 601 F.3d 306, 309 (5th Cir. 2010); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

Similarly, in deciding whether an exclusion provision applies, the court must examine the allegations in the underlying suit in light of the provisions of the insurance policy. *See Willbros RIP, Inc*. 601 F.3d at 309. Accordingly, if the only facts alleged in the underlying complaint are excluded from the policy's coverage, the insurer is not required to defend. *See Lincoln General*

*Ins.Co.* v. *Reyna*, 401 F.3d 347, 350 (5th Cir. 2005); *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009).

Moreover, the insured bears the initial burden of demonstrating that there is coverage under an insurance policy, while the insurer bears the burden of proving the applicability of any exclusion. *See Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citations omitted). Once the insurer has established that an exclusion applies, the burden shifts back to the insured to prove that an exception to the exclusion is applicable. *See Guar. Nat'l Ins. Co.*, 143 F.3d at 193.

### B. The Inverse Condemnation Exclusion Precludes Coverage

The Policy provides, *inter alia*, that Star "will pay those sums that the [City] becomes legally obligated to pay as damages because of a 'wrongful act' to which this insurance applies" and "[Star] will have the right and duty to defend any 'suit' seeking those damages."[4] One of the exclusions provides that the insurance does not apply to any liability:

> actually or allegedly arising out of or caused or contributed to by or in any way connected with any principle of eminent domain, condemnation proceeding, inverse condemnation, dedication by adverse use or adverse possession, by whatever name called

Having examined the language of the exclusion provision and the complaint in the underlying lawsuit, the Court concludes that the facts, as alleged by WRI (the underlying plaintiff), set out a claim for a taking or inverse condemnation.

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . . " Tex. Const. art. I, § 17. Similarly, the

---

[4]"Wrongful Act" is defined as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by you, as a public official or as an employee of yours."

United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend.V. A "taking" can be physical or regulatory. A regulatory taking may occur when the government imposes restrictions that either: (1) deny landowners of all economically viable use of their property; or (2) unreasonably interfere with the landowners' rights to use and enjoy their property. *See Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124 (1978); *Sheffield Development Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 671-673 (Tex. 2004); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). Therefore, a landowner may raise a takings or inverse condemnation claim based on the government's refusal to rezone property, grant a variance, or grant a permit for development. *See Hearts Bluff Ranch, Inc. v. State*, No.10-0491, 2012 WL 3800186, at *7-8 (Tex. Sup. Ct. Aug. 31, 2012); *Westgate, Ltd., v. State*, 843 S.W.2d 448, 452 (Tex. 1992); *City of Sherman v. Wayne*, 266 S.W.3d 34, 39-40 (Tex.App.-Dallas 2008, no pet.).

In the underlying lawsuit, WRI alleged that it purchased the Property in 2006 for $14 million with the goal of developing a retail center with Wal-Mart as its anchor tenant. After buying the Property in 2006, WRI requested that it be zoned for commercial use. Despite the City's Plan and state and local laws requiring approval and, despite the City Council's staff recommendation that WRI's first zoning request be approved, the City denied the first and subsequent requests. Although the City later approved one of WRI's zoning requests, it imposed conditions that made it virtually impossible to develop the Property in a commercially viable way. Hence, WRI's allegations raised a taking/inverse condemnation claim in the underlying lawsuit.[5] *See Sheffield Development Co., Inc.*, 140 S.W.3d at 671-673 (a "taking" may be

---

[5]As Star notes, it filed a Motion for Leave to File Supplemental Evidence (Docket No. 17) in order to introduce papers submitted by the City in the underlying lawsuit to show that the City referred to one of the underlying plaintiff's claims as an "inverse condemnation" claim. Although the Court denied Star's motion and although it is not necessary for the resolution of this case, the Court notes that the City had, in fact, referred to one of the

established when the government unreasonably interferes with a landowner's rights to use and enjoy the property); *Westgate*, 843 S.W.2d at 452 (noting that a refusal to grant a permit to develop property may amount to an inverse condemnation); *City of Sherman*, 266 S.W.3d at 39-40 (a refusal to rezone may constitute a taking); *see also Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994) (the landowner claimed that the City's refusal to rezone the property amounted to a taking). The City's argument that since it simply refused to rezone WRI's Property, "it 'took' nothing and condemned nothing," is unpersuasive because, as noted, a taking or inverse condemnation claim may be based on the government's refusal to rezone property or grant a permit for development. *See e.g., Hearts Bluff Ranch, Inc.*, 2012 WL 3800186, at *7-8; *Westgate*, 843 S.W.2d at 452; *City of Sherman*, 266 S.W.3d at 39-40; *Taub,* 882 S.W.2d at 826.

Although the Court finds that WRI had actually raised an inverse condemnation claim in the underlying lawsuit, that does not end the inquiry. In order for coverage to be precluded altogether, the Court must also find that the exclusion applies not only to WRI's specific claim of inverse condemnation, but also to all of WRI's other claims against the City. Having examined the language of the exclusion and the facts as alleged in the underlying lawsuit, the Court finds that all of the claims are barred by the exclusion.

When an insurance exclusion precludes coverage for liability "arising out of" a described conduct, "the exclusion is given a broad . . . and comprehensive interpretation" and a "claim need only bear an incidental relationship to the described conduct for the exclusion to apply." The words are also "understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *Allstate Ins.Co. v. Pierce*, No. 07-60384, 271 Fed.Appx. 416, 418 (5th Cir. 2008) (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998); *see also*

---

underlying plaintiff's claims as an "inverse condemnation" claim (*see* Docket No. 22, the City's Response to Motion to File Supplemental Evidence, Ex. 1, pp. 10-17).

*Scottsdale Ins. Co. v. Texas Sec. Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir. 1999); *Nutmeg Ins. Co. v. Clear Lake City Water Authority*, 229 F.Supp.2d 668, 684 (S.D.Tex. 2002). Similarly, exclusion provisions are interpreted broadly when they contain phrases such as "in any way connected to" or "attributable to." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc*. 271 F.Supp.2d 926, 932-933 (S.D. Tex. 2003), *aff'd*, 88 Fex. Appx. 725 (5th Cir. 2004); *Nutmeg Ins. Co.*, 229 F.Supp.2d at 681, 697; *General Star Indem. Co. v. Virgin Islands Port Authority*, No. 2001-188, 2007 WL 185122, at *1, 5 (D. Virgin Islands 2007).

The Court is of the view that language in the exclusion provision, such as "arising out of," or "contributed to by or in any way connected with any principle of eminent domain [or] inverse condemnation," indicates a clear intent that the exclusion be applied broadly and comprehensively. Therefore, although in the underlying lawsuit WRI labeled its other claims as violation of substantive due process, equal protection, estoppel, and a tortious interference with WRI's contracts, the core or nucleus of the underlying dispute between WRI and the City is the City's refusal to grant WRI's zoning requests. In other words, these are derivative claims and do not constitute justiciable causes of action apart from WRI's inverse condemnation claim. Accordingly, the Court finds that the inverse condemnation exclusion precludes coverage for all the claims asserted in the underlying lawsuit. *See Allstate Ins.Co.*, 271 Fed.Appx. at 416 (when an insurance exclusion precludes coverage for liability "arising out of" a described conduct, a "claim need only bear an incidental relationship to the described conduct for the exclusion to apply" and the "words are understood to mean 'originating from' . . . 'growing out of' or 'flowing from'") (citations omitted); *Scottsdale Ins. Co.*, 173 F.3d at 943 (when an exclusion precludes coverage for conduct "arising out of," a claim "need only bear an incidental relationship to the described conduct for the exclusion to apply").

Indeed, in *Nutmeg* and *General Star*, the courts examined inverse condemnation exclusions that were substantially similar to the exclusion in this case and applied them to all the claims that would not have existed but for the inverse condemnation claim. *See Nutmeg Ins. Co.*, 229 F.Supp.2d at 697 (an exclusion for any claim "arising out of inverse condemnation" applied not only to the "unconstitutional taking" claim, but also to the breach of contract and quantum meruit claims because they arose out of the taking);[6] *General Star Indem. Co.*, 2007 WL 185122, at *1, 5 (the exclusion provision precluded coverage for the inverse condemnation claim and all the claims that would not have existed but for inverse condemnation).

The City further argues that WRI directed its "takings" cause of action solely against the City while it also raised claims for fraud and tortious interference solely against the individual officials involved and, therefore, the inverse condemnation exclusion could not apply to the individual officials. The Court disagrees because the claims against the individual officials arose out of or were "connected" to the City's refusal to grant WRI's zoning requests. In fact, there would have been no claims for tortious interference or fraud against the individual officials had the City not refused to grant WRI's zoning requests. Therefore, the exclusion also applies to the claims against the individual officials.

---

[6] The City attempts to distinguish *Nutmeg* by arguing that it "involved allegations of a clear physical 'taking'" and that all the causes of action arose from the conduct that amounted to the physical taking whereas, in this case, there are no allegations of a physical taking and many of WRI's causes of actions do not relate to inverse condemnation. The City's argument is unpersuasive because, as noted, an inverse condemnation claim may be based on the government's refusal to rezone property, grant a variance, or grant a permit for development and there is no requirement that the government take "affirmative" actions against the property. Moreover, as discussed, the other claims in the underlying lawsuit would not have existed but for the City's refusal to grant WRI's zoning requests.

The City also relies on *Hartsville v. S.C. Mun. Ins. & Risk. Fin. Fund*, 677 S.E.2d 574, 579-80 (S.C. 2009), to support its argument that the inverse condemnation exclusion does not apply to all of WRI's claims. Besides being non-binding, *Hartsville* is unpersuasive because the exclusion provision there is not as broad and comprehensive as in the case at bar.

The Court also disagrees with the City's argument that the exclusion provision is ambiguous. A court will not find a contract ambiguous merely because the parties offer contradictory interpretations. Rather, there is ambiguity only when the contract is susceptible to two or more reasonable interpretations. *See Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n. 28 (5th Cir. 2000) (citations omitted). In this case, the Court finds that the exclusion provision is clear on its face and is unambiguous. Indeed, as noted, the courts in *Nutmeg* and *General Star* examined similar inverse condemnation exclusion provisions and found that they were unambiguous. *See Nutmeg Ins. Co.*, 229 F.Supp.2d at 681, 697; *General Star Indem. Co.*, 2007 WL 185122, at *1, 5.

Finally, the City claims that Star's duty to defend is separate from its duty to indemnify and, since Star has introduced no evidence of the settlement of the underlying lawsuit, Star has not met its burden to show that the inverse condemnation exclusion precludes coverage for the sum paid to settle the underlying lawsuit. While the City correctly notes that the duty to defend is separate from the duty to indemnity, the Court finds that all coverage is precluded by the inverse condemnation exclusion.

To determine whether there is a duty to defend, a court must simply compare the insurance policy and the facts as alleged in the underlying lawsuit, but, the duty to indemnify, on the other hand, is based on the actual facts established in the underlying lawsuit. *See D.R.Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2010*); Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Thus, the duties to defend and indemnify are "independent, and the existence of one does not necessarily depend on the existence or proof of the other." *D.R. Horton*, 300 S.W.3d at 745. However, if a court finds no duty to defend, it may also find no duty to indemnify when "the same reasons that negate the

duty to defend likewise negate any possibility that the insurer will ever have a duty to indemnify." *Farmers Tex.Cnty.Mut.Ins.Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

In this case, since the City settled with WRI in the underlying lawsuit, there were no factual findings by a court or trier of fact. Therefore, the facts/terms of the settlement agreement would be relevant in determining whether Star has a duty to indemnify. *See Colony Ins. Co.*, 647 F.3d at 253 (the duty to indemnify is based on the facts as established in the underlying lawsuit). Neither party, however, has provided the Court with the settlement agreement.[7] Nevertheless, even without the benefit of the settlement agreement, the Court determines that Star has no duty to indemnify because the same reasons that preclude a duty to defend also preclude a duty to indemnify. *See Griffin*, 955 S.W.2d at 84. Specifically, the inverse condemnation exclusion provides that the "insurance" does not apply to any "liability" "actually or allegedly arising out of or caused or contributed to by or in any way connected with any principle of eminent domain . . . inverse condemnation . . . , by whatever name called." Given the broad and comprehensive nature of the exclusion provision, the Court finds that there could be no facts in the settlement agreement that would alter the Court's conclusion that all of WRI's claims originate from its alleged inverse condemnation claim. Therefore, the "same reasons that negate" Star's duty to defend also negate its duty to indemnify the City. *See Griffin*, 955 S.W.2d at 84; *see also Admiral Ins. Co.*, 2011 WL 318277, at *6 (finding that the court could not "conceive what facts" might be proved in the underlying lawsuit that would give rise to a duty to indemnify).

---

[7]According to Star, the City settled the underlying lawsuit with WRI for $1.6 million. The City also claimed that it incurred almost $2,000,000 in costs and expenses defending the suit. The City does not dispute Star's representations.

## C. The City Is Not Entitled To Statutory Penalties or Attorney's Fees.

The City argues that Star has violated Chapter 542 of the Texas Insurance Code (§§ 542.057; 542.058), which requires the prompt payment of claims, by delaying and/or failing to timely pay the City's reasonable defense and settlement costs. The Court finds that since Star had no duty to defend or indemnify the City, Star cannot be liable for damages under Chapter 542. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (an insurer cannot be liable for violating the prompt-payment statute if the "insurance claim is not covered by the policy"); *see also Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 n. 4 (Tex. App.-Austin 2009, pet. denied); *Safeco Ins. Co. of Indiana v. Hiles*, No. 3:10-CV-1289-D, 2011 WL 3500998, at *15 (N.D. Tex. Aug. 9, 2011). Similarly, since Star had no duty to defend or indemnify the City, there was no breach of contract, and, as such, Star cannot be liable for attorney's fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (in order to be entitled to attorney's fees under Section 38.001, a party must have prevailed and recovered damages); *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 (5th Cir. 2000) (a party cannot recover attorney's fees if it did not prevail on its breach of contract claim); *see also Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc*., 134 S.W.3d 195, 201 (Tex. 2004).

**VI.  CONCLUSION**

Based on the foregoing discussion, the Court finds that since Star had no duty to defend or indemnify, it is entitled to summary judgment on all of the City's claims.  Therefore, the Court GRANTS Star's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED at Houston, Texas this 12th day of October, 2012.

_____
Kenneth M. Hoyt
United States District Judge